IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SCOTT WILLIAM DAVIS,

    Plaintiff,

  v.

SONOMA COUNTY SHERIFF'S DEPARTMENT
ASSISTANT SHERIFF LINDA SUVOY,
et al.,

    Defendants.
                               /

No. 09-5798 CW (PR)

ORDER OF SERVICE; AND DENYING PLAINTIFF'S MOTION FOR EXTENSION OF TIME

    Plaintiff Scott William Davis has filed this pro se civil rights action concerning events that took place when he was a pretrial detainee in the Sonoma County Jail.[1]

    Plaintiff has been granted leave to proceed in forma pauperis.

    On April 23, 2010, Plaintiff filed his first amended complaint (FAC).

    Venue is proper in this district because the acts complained of occurred in Sonoma County, which is located in this judicial district. See 28 U.S.C. § 1391(b).

    Before the Court is Plaintiff's "Motion for Extension of Time," in which he "respectfully ask[s] the Court to extend time for serving defendants in this case . . . ." (Pl.'s Mot. at 1.) Because Plaintiff has been granted leave to proceed in forma pauperis, he is not required to serve Defendants in this action. Therefore, the Court DENIES his motion (docket no. 9) as unnecessary.

---

[1] Plaintiff does not explicitly state he was a pretrial detainee at the time of the events giving rise to his claims. However, the Court infers this from the allegations in his amended complaint.

BACKGROUND

In his FAC, Plaintiff names the individuals from the Sonoma County Sheriff's Department being sued, including: Assistant Sheriff Linda Suvoy; Lt. M. Awad; Mail Department Supervisor Karen Stiny; Sergeant Pederson; Lieutenants House and Toby; Deputy Ardon; Law Librarian Ned Labbe[2]; as well as "John Does in the Jail mailroom, John Doe Strip Search Officers, and Lt. John Doe." (FAC at 2.) The Court now reviews the FAC and divides his factual allegations into multiple claims, as listed below.

I.   Legal Mail - Claim One

Plaintiff was incarcerated at Sonoma County Jail from April 3, 2008 through September 30, 2008 and again from November 30, 2008 through the end of April, 2009. (Id. at 4.) He claims his mail was opened "four times, twice on each stay . . . three (3) times coming in and once while going out." (Id.) Specifically, Plaintiff claims that Defendants Stiny, Awad, Ardon and "John Does in the Jail mailroom" opened or failed to intervene in the opening of his legal mail on June 8, 2008, August 12, 2008, January 30, 2009, and March 17, 2009. (Id. at 4-9.) He alleges that he was "pro per in his criminal case and civil case at this time." (Id. at 4 (citing Case no. C 07-5314 CW (PR)).)

Plaintiff claims that these four instances of his legal mail being opened "caused fear that stopped [his] 1983 action," Case no. C 07-5314 CW (PR), filed against "Sonoma County Probation and [the] Drug Court Treatment Center" for "$1.7 million." (Id. at 2, 19, 22.) The record shows that on January 28, 2009, Case no. C 07-5314

---

[2] In his amended complaint, Plaintiff incorrectly spells Defendant Labbe's name as "Labbae."

2

CW (PR) was "dismissed without prejudice pursuant to Rule 3-11 of the Northern District Local Rules" because sixty days had passed after mail directed to Plaintiff was returned as undeliverable on November 20, 2008. (Jan. 28, 2009 Order in Case no. C 07-5314 CW (PR) at 2.) Therefore, Plaintiff claims that he "has no remedy for [his] forced dropped civil case now" because the "time ha[s] expired to litigate [his] civil case . . . ." (FAC at 15, 19.)

II.   Retaliation, Harassment and Threats - Claim Two

Plaintiff claims that Defendants Pederson, Awad, Stiny, House and Ardon "violated [his] rights by threatening him either directly or indirectly for asserting his right to petition the government for a redress of grievances concerning a Section 1983 civil action," Case no. C 07-5314 CW (PR). (Id. at 20 (citing FAC, Ex. J, First Amended Complaint in Case no. C 07-5314 CW (PR)).) Plaintiff claims that his retaliation claim is based on his legal mail being opened four times, Defendant Stiny's failure to intervene in the opening of his mail, his limited law library access, his phone calls being recorded and then taken away "for illegitimate reason[s]," and Defendant Pederson "intimidating" Plaintiff after he complained that Defendant Ardon opened his legal mail on March 17, 2009. (Id. at 20-21.) Plaintiff claims these actions above "amounted to a campaign of harassment." (Id. at 21 (citing Bart v. Telford, 677 F.2d 622 (7th Cir. 1982)).) He also sues Defendants Suvoy, Awad, Stiny, Pederson and House in their supervisory capacity for "exhibit[ing] inadequate training, supervision or discipline of the officers under them . . . ." (Id. at 21.) Again, Plaintiff claims that Defendants' retaliatory actions "forced [him] to drop his civil suit action," Case no.

3

C 07-5314 CW (PR).  (<u>Id.</u> at 22.)  Plaintiff also claims that if it were not for the "pressure" put on him, he "might have got[ten] a better recommendation from the Probation Department, not the maximum (8 years +) they asked for in a non-accident 4th DUI case."  (<u>Id.</u> at 15.)

III. Strip Searches - Claim Three

    Plaintiff claims that Defendant "John Doe Strip Search Officers" violated his constitutional rights when they conducted two "illegal" strip searches while he was a "DUI predetainee" between November 30, 2008 and April 30, 2009.  (FAC at 14, 20.)

IV.  Denial of Access to the Courts - Claim Four

    Plaintiff claims he suffered from a lack of access to the courts because in March, 2009 the jail law library paralegal limited his law library access, and Defendants Labbe and Awad limited the amount of copies he could make at the law library. Plaintiff also claims that Defendant Toby "stop[ped] all pro per civil calls while Plaintiff tried to represent himself in his civil case on March 2, 2009."[3]  (<u>Id.</u> at 13.)  Furthermore, Plaintiff has attached the grievance forms he filed relating to the above violations.  (FAC, Exs. F, H, I.)  The March 9, 2009 response to Plaintiff's grievance relating to the lack of access to the law library in March, 2009 states that there was "no current request for [him] to go to the law library."  (FAC, Ex. F.)  He was instructed to "put in request forms to go to the law library."  (<u>Id.</u>)  The March 19, 2009 response to his grievance relating to lack of access to the copier states that Defendant Labbe "refused

---

[3] The record shows that in March, 2009, Plaintiff's civil rights action had already been closed, as mentioned above.

4

to make copies stating that the material [Plaintiff] wished to be copied did not qualify as ones that he would normally copy." (FAC, Ex. H.) The record shows Plaintiff made a request for "fifty (50) copies of [his] court minutes" either to send to his attorney or keep for himself. (Id.) After being told that Defendant Labbe was "not authorized to grant [his] request," Plaintiff was informed that his "attorney can receive [his] court minutes upon request to the courts." (Id.) Finally, in the March 2, 2009 response to the grievance relating to Plaintiff's lack of access to "pro per phone calls," Defendant Toby states: "As we discussed I will grant 5 more calls. However, this will be the last set of calls. After this you can purchase phone cards. Call collect. Write letters." (FAC, Ex. I.)

DISCUSSION

A federal court must conduct a preliminary screening in any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a).

In its review, the court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted or seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2). Pro se pleadings must be liberally construed. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and

5

(2) that the alleged violation was committed by a person acting under the color of State law. West v. Atkins, 487 U.S. 42, 48 (1988).

I.   Legal Mail –- Claim One

Prisoners enjoy a First Amendment right to send and receive mail. Witherow v. Paff, 52 F.3d 264, 265 (9th Cir. 1995) (citing Thornburgh v. Abbott, 490 U.S. 401, 407 (1989)). A prison, however, may adopt regulations or practices which impinge on a prisoner's First Amendment rights as long as the regulations are "reasonably related to legitimate penological objectives." Turner v. Safley, 482 U.S. 78, 89 (1987).

Prison officials may institute procedures for inspecting "legal mail," e.g., mail sent between attorneys and prisoners, see Wolff v. McDonnell, 418 U.S. 539, 576-77 (1974) (incoming mail from attorneys), and mail sent from prisoners to the courts, see Royse v. Superior Court, 779 F.2d 573, 574-75 (9th Cir. 1986) (outgoing mail to court). But the opening and inspecting of "legal mail" outside the presence of the prisoner may have an impermissible "chilling" effect on the constitutional right to petition the government. O'Keefe v. Van Boening, 82 F.3d 322, 325 (9th Cir. 1996) (citing Laird v. Tatum, 408 U.S. 1, 11 (1972)). If so, prison officials must establish that legitimate penological interests justify the policy or practice. O'Keefe, 82 F.3d at 327. Generally, "legal mail" may not be read or copied without the prisoner's permission. Casey v. Lewis, 43 F.3d 1261, 1269 (9th Cir. 1994), rev'd on other grounds, 518 U.S. 343 (1996). But again, prison officials may establish that legitimate penological interests justify the policy or practice. O'Keefe, 82 F.3d at 327.

6

Here, Plaintiff's allegations in claim one are sufficient to state a cognizable First Amendment claim against Defendants Stiny, Awad and Ardon for opening or failing to intervene in the opening of Plaintiff's legal mail outside of his presence.

II. Retaliation, Harassment and Threats - Claim Two

Retaliation by a state actor for the exercise of a constitutional right is actionable under 42 U.S.C. § 1983, even if the act, when taken for different reasons, would have been proper. See Mt. Healthy City Bd. of Educ. v. Doyle, 429 U.S. 274, 283-84 (1977). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005). Accordingly, a prisoner suing prison officials under § 1983 for retaliation must allege he was retaliated against for exercising his constitutional rights and that the retaliatory action did not advance legitimate penological goals, such as preserving institutional order and discipline. See Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995). The prisoner also must allege the defendants' actions caused him some injury. Resnick v. Hayes, 213 F.3d 443, 449 (9th Cir. 2000).

Here, Plaintiff's complaint alleges a cognizable claim that Defendant Ardon retaliated against him for filing his complaint in Case no. C 07-5314 CW (PR) by opening his legal mail on March 17, 2009. The other allegation in claim two -- relating to

7

Defendant Pederson "intimidating" Plaintiff after he complained that Defendant Ardon opened his legal mail on March 17, 2009 -- is insufficient to state a cognizable constitutional claim. See Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987) (verbal harassment or abuse is insufficient to amount to a constitutional deprivation). Therefore, the claim based on verbal harassment by Defendant Pederson is DISMISSED without leave to amend.

Plaintiff sues Defendants Suvoy, Awad, Stiny, Pederson and House in their supervisory capacity. Plaintiff's supervisory liability claims against Defendants Stiny and Awad are sufficient to proceed. However, Plaintiff does not allege facts demonstrating that the remaining Defendants violated his federal rights, but seems to claim they are liable based on the conduct of their subordinate, Defendant Ardon. There is, however, no respondeat superior liability under § 1983 solely because a defendant is responsible for the actions or omissions of another. See Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). A supervisor generally "is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." Id. A supervisor may also be held liable if he or she implemented "a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." Redman v. County of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991) (en banc). Plaintiff's supervisory liability claim against Defendants Suvoy, Pederson and House is therefore DISMISSED with leave to amend. He may file an amendment to the complaint that alleges supervisory liability under the standards explained

8

above.

III. Strip Searches - Claim Three

The Fourth Amendment applies to the invasion of bodily privacy in prisons and jails. Bull v. San Francisco, 595 F.3d 964, 974-75 (9th Cir. 2010) (en banc). To analyze a claim alleging a violation of this privacy right, the court must apply the test set forth in Turner v. Safley, 482 U.S. 78, 89 (1987), and determine whether a particular invasion of bodily privacy was reasonably related to legitimate penological interests. See Bull, 595 F.3d at 973. Prisoners and pretrial detainees in institutional settings may be subjected to strip searches and body cavity searches if they are conducted in a reasonable manner. See Bell v. Wolfish, 441 U.S. 520, 561 (1979). The Fourth Amendment right to be secure against unreasonable searches extends to incarcerated prisoners, but the reasonableness of a particular search must be determined by reference to the prison context. See Michenfelder v. Sumner, 860 F.2d 328, 332 (9th Cir. 1988).

At issue here are two strip searches at a jail. However, Plaintiff does not claim that the strip searches by Defendants "John Doe Strip Search Officers" were unreasonable or conducted in an abusive manner. While he claims the searches were "illegal" (FAC at 20), such conclusory allegations do not amount to a constitutional violation.

As noted above, the Court must consider the reasonableness of the searches under Bell to determine if they were reasonably related to legitimate penological interests under Turner. The prisoner bears the burden of showing that prison officials intentionally used exaggerated or excessive means to enforce

9

security in conducting a search.  See Thompson v. Souza, 111 F.3d 694, 700 (9th Cir. 1997).

Even if Plaintiff was strip searched twice, he does not claim that the searches were unreasonable or conducted in an abusive manner.  He only alleges that he was "strip searched" twice as a "DUI predetainee."  Therefore, he does not allege facts from which it could be inferred that the strip searches violated his Fourth and Fourteenth Amendment rights.  Accordingly, Plaintiff's claim relating to the strip searches performed by Defendants "John Doe Strip Search Officers" is DISMISSED for failure to state a claim.

IV.  Denial of Access to the Courts - Claim Four

In Bounds v. Smith, the Supreme Court held "that the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." 430 U.S. 817, 828 (1977).  Subsequently, the Supreme Court clarified that Bounds did not establish a substantive right to law library access, but rather signaled that, in order for prisoners' right of access to the courts to be meaningful, they must be given adequate resources to prepare.  See Lewis, 518 U.S. at 350-51.  The Court explained:

> Because Bounds did not create an abstract, freestanding right to a law library or legal assistance, an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense. That would be the precise analog of the healthy inmate claiming constitutional violation because of the inadequacy of the prison infirmary.  Insofar as the right vindicated by Bounds is concerned, "meaningful access to the courts is the touchstone," and the inmate therefore must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program

10

> hindered his efforts to pursue a legal claim. He might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known. Or that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable even to file a complaint.

Id. at 351.

In the instant case, Plaintiff has not plead any actual harm caused by his alleged lack of access to the prison law library, to the copier or to "pro per phone calls" in March, 2009. While Plaintiff claims that these violations affected his civil action, the record shows that Case no. C 07-5314 CW (PR) was dismissed without prejudice two months earlier -- on January 28, 2009. Thus, Plaintiff's lack of access to the above in March, 2009 could not have affected the status of his closed civil action. Furthermore, a review of the responses to Plaintiff's grievances relating to this issue shows that: (1) he was not refused access to the law library, but, instead, he had not actually submitted a request for such access; (2) Defendant Toby refused to make fifty copies of Plaintiff's "court minutes" because he was not authorized to do so; and (3) Plaintiff was granted five more "pro per phone calls" on March 2, 2009 and was instructed to purchase a phone card if he wished to make any more calls. Therefore, it is clear that his already-closed civil action could not have been hindered based on the alleged violations above. As a result, the Court finds no merit in Plaintiff's allegation that he was unable to pursue his claims due to a lack of access to the law library, the copier, or "pro per phone calls" and that he has suffered no harm from a lack thereof. Therefore, Plaintiff's claim against Defendants Labbe and

11

Toby relating to a denial of access to the courts in March, 2009 is DISMISSED for failure to state a claim.

V. Claims Against Doe Defendants

Plaintiff identifies Doe Defendants, including "John Does in the Jail mailroom," and "Lt. John Doe," whose names he intends to learn through discovery. The use of Doe Defendants is not favored in the Ninth Circuit. See Gillespie v. Civiletti, 629 F.2d 637, 642 (9th Cir. 1980). However, where the identity of alleged defendants cannot be known prior to the filing of a complaint the plaintiff should be given an opportunity through discovery to identify them. Id. Failure to afford the plaintiff such an opportunity is error. See Wakefield v. Thompson, 177 F.3d 1160, 1163 (9th Cir. 1999). Accordingly, the claims against these Doe Defendants are DISMISSED from this action without prejudice. Should Plaintiff learn their identity through discovery, he may move to file a second amended complaint to add them as named defendants. See Brass v. County of Los Angeles, 328 F.3d 1192, 1195-98 (9th Cir. 2003).

CONCLUSION

For the foregoing reasons, the Court orders as follows:

1. Plaintiff's allegations in claim one are sufficient to state a cognizable First Amendment claim against Defendants Stiny, Awad and Ardon for opening or failing to intervene in the opening of Plaintiff's legal mail outside of his presence.

2. Plaintiff's allegations in claim two state a cognizable retaliation claim against Defendant Ardon -- for retaliating against him for filing his complaint in Case no. C 07-5314 CW (PR) by opening his legal mail on March 17, 2009 -- and against

12

Defendants Stiny and Awad in their supervisory capacity. The other allegation in claim two based on verbal harassment by Defendant Pederson is dismissed without leave to amend.

 3. Plaintiff's supervisory claims against Defendants Suvoy, Pederson and House in their supervisory capacity are DISMISSED with leave to amend as indicated above. Within <u>thirty (30) days</u> of the date of this Order Plaintiff may file an amended supervisory liability claim against Defendants Suvoy, Pederson and House as set forth above in DISCUSSION, Section II of this Order. Plaintiff shall resubmit only that supervisory liability claim and not the entire complaint. Plaintiff must clearly label the document an "Amendment to the Complaint," and write in the case number for this action, Case No. C 09-5798 CW (PR). The failure to do so will result in the dismissal without prejudice of his supervisory liability claim against Defendants Suvoy, Pederson and House.

 4. Plaintiff's claim three relating to the strip searches performed by Defendants "John Doe Strip Search Officers" is DISMISSED without leave to amend for failure to state a claim.

 5. Plaintiff's claim four against Defendants Labbe and Toby relating to a denial of access to the courts in March, 2009 is DISMISSED without leave to amend for failure to state a claim.

 6. All claims against Doe Defendants, including "John Does in the Jail mailroom," and "Lt. John Doe," are dismissed with leave to move to amend if Plaintiff learns their identity through the discovery process.

 7. The Clerk of the Court shall mail a Notice of Lawsuit and Request for Waiver of Service of Summons, two copies of the Waiver of Service of Summons, a copy of the amended complaint and all

attachments thereto (docket no. 8) and a copy of this Order to <u>Sonoma County Sheriff's Department Lt. M. Awad; Mail Department Supervisor Karen Stiny; and Deputy Ardon</u>.  The Clerk of the Court shall also mail a copy of the complaint and a copy of this Order to the Sonoma County Counsel's Office.  Additionally, the Clerk shall mail a copy of this Order to Plaintiff.

      8.    Defendants are cautioned that Rule 4 of the Federal Rules of Civil Procedure requires them to cooperate in saving unnecessary costs of service of the summons and complaint.  Pursuant to Rule 4, if Defendants, after being notified of this action and asked by the Court, on behalf of Plaintiff, to waive service of the summons, fail to do so, they will be required to bear the cost of such service unless good cause be shown for their failure to sign and return the waiver form.  If service is waived, this action will proceed as if Defendants had been served on the date that the waiver is filed, except that pursuant to Rule 12(a)(1)(B), Defendants will not be required to serve and file an answer before <u>sixty (60) days</u> from the date on which the request for waiver was sent.  (This allows a longer time to respond than would be required if formal service of summons is necessary.)  Defendants are asked to read the statement set forth at the foot of the waiver form that more completely describes the duties of the parties with regard to waiver of service of the summons.  If service is waived after the date provided in the Notice but before Defendants have been personally served, the Answer shall be due <u>sixty (60) days</u> from the date on which the request for waiver was sent or <u>twenty (20) days</u> from the date the waiver form is filed, whichever is later.

      9.    Defendants shall answer the complaint in accordance with

14

the Federal Rules of Civil Procedure.  The following briefing schedule shall govern dispositive motions in this action:

      a.   No later than <u>ninety (90) days</u> from the date their answer is due, Defendants shall file a motion for summary judgment or other dispositive motion.  The motion shall be supported by adequate factual documentation and shall conform in all respects to Federal Rule of Civil Procedure 56.  If Defendants are of the opinion that this case cannot be resolved by summary judgment, they shall so inform the Court prior to the date the summary judgment motion is due.  All papers filed with the Court shall be promptly served on Plaintiff.

      b.   Plaintiff's opposition to the dispositive motion shall be filed with the Court and served on Defendants no later than <u>sixty (60) days</u> after the date on which Defendants' motion is filed.  The Ninth Circuit has held that the following notice should be given to <u>pro se</u> plaintiffs facing a summary judgment motion:

> The defendants have made a motion for summary judgment by which they seek to have your case dismissed. A motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure will, if granted, end your case.
>
> Rule 56 tells you what you must do in order to oppose a motion for summary judgment. Generally, summary judgment must be granted when there is no genuine issue of material fact -- that is, if there is no real dispute about any fact that would affect the result of your case, the party who asked for summary judgment is entitled to judgment as a matter of law, which will end your case. When a party you are suing makes a motion for summary judgment that is properly supported by declarations (or other sworn testimony), you cannot simply rely on what your complaint says. Instead, you must set out specific facts in declarations, depositions, answers to interrogatories, or authenticated documents, as provided in Rule 56(e), that contradict the facts shown in the defendant's declarations and documents and show that there is a genuine issue of material fact for trial. If you do not submit your own evidence in opposition, summary judgment, if appropriate, may be entered against

15

>you. If summary judgment is granted [in favor of the defendants], your case will be dismissed and there will be no trial.

See Rand v. Rowland, 154 F.3d 952, 962-63 (9th Cir. 1998) (en banc).

Plaintiff is advised to read Rule 56 of the Federal Rules of Civil Procedure and Celotex Corp. v. Catrett, 477 U.S. 317 (1986) (party opposing summary judgment must come forward with evidence showing triable issues of material fact on every essential element of his claim). Plaintiff is cautioned that because he bears the burden of proving his allegations in this case, he must be prepared to produce evidence in support of those allegations when he files his opposition to Defendants' dispositive motion. Such evidence may include sworn declarations from himself and other witnesses to the incident, and copies of documents authenticated by sworn declaration. Plaintiff will not be able to avoid summary judgment simply by repeating the allegations of his complaint.

  c. If Defendants wish to file a reply brief, they shall do so no later than thirty (30) days after the date Plaintiff's opposition is filed.

  d. The motion shall be deemed submitted as of the date the reply brief is due. No hearing will be held on the motion unless the Court so orders at a later date.

  10. Discovery may be taken in this action in accordance with the Federal Rules of Civil Procedure. Leave of the Court pursuant to Rule 30(a)(2) is hereby granted to Defendants to depose Plaintiff and any other necessary witnesses confined in prison.

  11. All communications by Plaintiff with the Court must be served on Defendants, or Defendants' counsel once counsel has been

16

designated, by mailing a true copy of the document to Defendants or Defendants' counsel.

12. It is Plaintiff's responsibility to prosecute this case. Plaintiff must keep the Court informed of any change of address and must comply with the Court's orders in a timely fashion.

13. Extensions of time are not favored, though reasonable extensions will be granted. Any motion for an extension of time must be filed no later than <u>fifteen (15) days</u> prior to the deadline sought to be extended.

14. Plaintiff's "Motion for Extension of Time" (docket no. 9) is DENIED as unnecessary.

15. This Order terminates Docket no. 9.

IT IS SO ORDERED.

Dated: 3/29/2011

*[signature]*
CLAUDIA WILKEN
United States District Judge

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF CALIFORNIA

SCOTT WILLIAM DAVIS,

        Plaintiff,

v.

SONOMA COUNTY SHERIFFS DEPARTMENT et al,

        Defendant.

Case Number: CV09-05798 CW

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on March 29, 2011, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Scott W. Davis F55132
370 Wilson Ln.
Windsor, CA 95492

Dated: March 29, 2011

        Richard W. Wieking, Clerk
        By: Nikki Riley, Deputy Clerk